Thank you, everyone. May it please the Court, my name is Paul Wexler. I'm along with Mr. Ostroger and Mr. Junkier. I represent Mr. Roth, who is a shareholder of Brocade Communications. I would like to reserve five minutes of my time for rebuttal and just take ten minutes now to discuss our position. Mr. Roth brought an action under Section 16B of the Securities and Exchange Act of 1934 against four officers and directors of Brocade Communications. And the gravamen of the claim was that certain option grants that were granted to these defendants constituted purchases under Section 16B, which could be matched with sales six months before these option grants were tendered and six months after the option grants were tendered. Our calculation of the damages in the case, although impossible to refine at this point, was well north of $200 million. And we brought the case in this district before Judge Breyer. As the Court knows, Section 16B is a blunt instrument, some courts have said, or a strict liability statute, as other courts have said, which is essentially designed to wring the profits out of improper behavior by insiders who purchase and sell. And motive and whether or not they knew what they were doing or didn't know what they were doing generally doesn't apply. The issue in this case is whether they are entitled to an exemption, an exemption that the SEC, and this Court has dealt with very carefully in the Dryland decision, whether they are entitled to an exemption. We come here today because we don't think Judge Breyer gave us a proper day in court in connection with the pleadings that we've submitted before him. And for three reasons. Essentially, as Judge Breyer said in his first decision, it actually were, for these purposes, two opinions, one of which he dismissed our First Amendment complaint on the ground that essentially we were trying to put a square peg in a round hole. He suggested that there were other remedies available for dealing with the allegations of misconduct or fraud by these defendants and that therefore he didn't think this was a 16B case. And he suggested that what we should do is prove, I'm sorry, he suggested with 9B specificity, we should allege that these people were not entitled to the exemption because the options were never approved by the Compensation Committee. We then presented him with a new pleading in which we said that these exemptions were not approved in advance as required by the SEC's gloss on the rule and that they were backdated and therefore could not possibly be the kinds of transactions that were intended by the SEC to be exempted. Now, we're here because we think Judge Breyer erred in essentially three aspects, one of which is I think he erred in requiring us to plead with Rule 9B specificity that they were not entitled to an exemption. I think even had he not used Rule 9B and said Twombly standard should apply, I think that we should not have been in the position to have to disprove or prove a negative, which is essentially that they're entitled to an exemption. And I think he erred in the sense of how he construed the exemption. And I think that essentially this was not a case that should have been decided on a 12B6 motion. Can you also address the statute of limitations issue? Yes. I have to say that that's the one that concerns me the most. I'd be happy to. We urge in the brief, and I urge you again here, that Judge Breyer did not decide the statute of limitations question, but noting that it is an unusual and difficult issue. The case law from Whitaker in this circuit is if you don't file a Form 4, that alerts the marketplace to the existence of a claim, you are not entitled to invoke the statute of limitations. That's equitably told. Now, the reason for this is because the constituency who brings these claims are really two such constituencies. It's the company, and it's shareholders, lawyers who make a demand on the company to bring the case, and then under the specific rules of the statute are entitled to, if they wait 60 days, they can then bring their own case. So the Whitaker court said, well, if you don't file Form 4s and you don't alert the marketplace, it's not fair that you should take advantage of the fact that you didn't comply with the law and then get rid of any 16B liability. And that is also the Second Circuit's position in the Litzler case. The Second Circuit gloss, and Whitaker goes back a while, the Second Circuit case was in the last few years, the Second Circuit case's position was, look, when you're doing this, you have to look at these forms and be able to find the claim right on the face of the form. The claim there was that the plaintiff could have gone to other sources and reconstructed what happened. And essentially the Second Circuit said, uh-uh, you have to be able to look at the form and just as if you were adding 2 plus 2, know that there's a claim. Kagan. It's not that the forms were filed. They weren't. And if we agreed with you that the plaintiff doesn't have to plead the exemption, then don't you have everything you need on the face? No. I'll explain that. The reason is they claimed an exemption. I mean, essentially what we hear about this argument is that you would never have a statute because either you're entitled to the exemption, in which case you win, or if you're not entitled to the exemption, then you never get to claim the statute of limitations. So it sort of eviscerates, it writes the statute of limitations out of the statute. That's certainly the defendant's argument, but if you conversely look at it, if a filer puts in an exemption and doesn't wrongfully, let's say, knowingly and wrongfully says I'm entitled to an exemption I'm not entitled to, then essentially his own behavior is allowing him to avoid. When would he ever get the benefit of the statute of limitations under your interpretation? Well, in the case in which an exemption was not properly, was taken as not properly entitled to? No. He would need to file the, you would have to not claim an exemption as a filing notice in order for the statute of limitations to get. Well, I wouldn't be suggesting that he should file an exemption because not filing an exemption is entitled to an exemption. I'm suggesting. But if there was a good faith belief of an exemption, then you would have to put that on your form, and that puts you on notice of the transaction, doesn't it? It puts you on notice of the transaction, but if, but as a practical matter, there are many exempt transactions under Section 16b, so that a company or a shareholder's lawyer, if an exemption was taken that the plaintiff couldn't determine whether it was proper or not, you would be suggesting the plaintiff sort of would have to sue every time there's an exemption and determine whether or not, I'm sorry, Judge, go ahead. Essentially, I hear you saying that we'll never have a motion to dismiss on the prescription because all the plaintiff has to allege is that the filing was fraudulent, and then we'll have to have a trial to determine whether or not it was fraudulent. I'm not suggesting that simply saying the filing was fraudulent would be enough. I'm suggesting that if it meets the Twombly standards of showing that the exemption, when there was no gatekeeping and there's no, and there's clearly an opportunity to control the timing of the transaction, then in those circumstances, the statute of limitations shouldn't be invoked because in those cases, there's a reasonable doubt that they did it in good faith. There's, I agree with you, the principles are colliding. On the other hand, if you allow people to take an exemption just because they want to put it on their form, then you don't alert the marketplace to what the Second Circuit said is the equivalent of adding two plus two. You're just essentially saying there is no claim. So I understand the difference between not filing something at all and filing a, but the practical significance is no different. But so the answer to the question is could there ever be a statute of limitations would be no, there wouldn't, couldn't be. Well, no. There's a statute of limitations. Well, there is one, but it could never really, one could never benefit from it. There would be, as long as you invoked an exemption to which you felt you were legitimately entitled, that basically takes out your statute of limitations defense. And anyone can sue you forever because they were never on notice. Well, if, I'm not, I'm suggesting that. So I mean, is that, am I correct that that would be your reading? No, I don't think so. Okay. I think someone can make the argument that allowing the statute of limitations to be told in an essence where, or not to be told in an essence where. But it gets told when they have no notice of any transaction whatsoever, right? Right. Yes. That's what Whitaker said. That's what Whitaker. Yes. Right. That's true. There's a difference here, right? No question. Because you do know that something occurred. Right. But knowing that something, knowing that there was a transaction, there are thousands of transactions every week that are filed with exemptions. To allow the statute of limitations to run where an exemption is improperly taken, the exemption doesn't put the marketplace on notice of it. So you're rewarding. You're not addressing the question about the statute of limitations. We know that a statute of limitations may allow people who have done things wrong to go unpunished. That's the purpose of it. There's a period of a statute of repose says at a certain point you no longer have to litigate the propriety of your action. And so the question is, under your interpretation, is the person who filed the form 4 or 5 ever get the advantage of that period of repose? Yes. What would the circumstances be? He would, that person would get it if he files the exemption and files this document and there's no claim brought against him, it would be over. But in the situation. That's just because somebody was asleep at the switch, not because. I think to get, I think the answer is if the exemption is found out later to be improperly then that statute of limitations should not be deemed to have a right. That's unfortunately the best answer I can give. Another way, though, to go down that road is if Judge Breyer was wrong in his conceptualization of the claim by having you basically have to import the exemptions, it sort of comes back out the other end, though, because I'm kind of hearing you saying that maybe it's noticed if they can prove the exemption was properly taken. Well, if the exemption is properly taken, then the case is over. Okay? I mean, that's for sure. Go ahead. We concede that. Okay. If it turns out that public information comes out to show that the exemption, which is a rarity, I would say, that shows the exemption was improperly taken, then that statute of limitations should not be running because otherwise you would just allow people to claim an exemption, simply allow the statute of limitations to run and Well, but that, of course, assumes, I mean, it's not just a question of like writing your mother a letter and claiming an exemption. I mean, you're making an SEC filing which has certification and legal consequences beyond just throwing it onto the table.  I don't know that Not as previously conceived, but at least more important than the SEC. There's certainly a difference between writing a letter to your mother and filing an SEC. But in this particular instance, I don't think that the transactions, at least that we allege them, show that these kinds of niceties were met. So Do you want to save the remaining time? Can I ask just one factual question before you go? There's a question whether the defendant made a sale after 2002. When I looked through the Exhibit C to the First Amendment complaint, it has sale dates in 2000, but one of them was 2006. And it appeared to be a typo, but I thought I would ask you whether there's any Can I ask you where you're looking? It's Exhibit C to the First Amendment complaint. It's at ER 88. I think since I do have five minutes to sum up, while I go look at it, I can answer your question. You have about a minute and a half left. On this round? No, total. You had 15 minutes. You've used almost all of it. I thought I reserved five at the beginning. You reserved it, but I told you at the beginning you have to watch your time. Oh, I'm sorry. Okay. Well, then I am going to reserve the rest of my time so I can come back and answer your question. Thank you. Good morning, Your Honor. John Potter, appearing on behalf of Michael Byrd, and I will be using 13 minutes of the appellee's time with respect to our argument. Two minutes have been reserved by Greg Reyes's counsel, who will address the Court with respect to specific issues that pertain to Mr. Reyes.  You addressed the question of the tolling because Judge Breyer didn't. Well, I would respectfully disagree with my adversary on that particular point, Your Honor. The case law is clear that the Ninth Circuit can consider arguments that were presented below. If a district court elected not to consider that issue, there's still a basis under case law for the Ninth Circuit to entertain, consider, and rule on the issue. And here, Your Honor, we're talking about quintessentially a legal issue. And that is the type of issue that the Ninth Circuit is particularly well-equipped to consider and render a resolution on. And we believe with respect to this particular issue that the Ninth Circuit and the law is crystal clear that this lawsuit was filed too late. And the reason for that, Your Honor, is really twofold. As Judge Breyer correctly observed in his ruling below, that while he was not prepared to address the statute of limitations issue, he did note that the plaintiff's position was unprecedented. And we would submit, Your Honor, that far from being nearly unprecedented, it runs afoul of the teaching of Whitaker. Because in the Whitaker decision, the Ninth Circuit was very clear that in order to apply any sort of tolling or to calculate the relevant statute of limitations, it must be done through a mechanical application of readily identifiable objective facts, so that in the Whitaker opinion, the Court identified the filing of a Form IV as a readily ascertainable objective fact which could give rise to the mechanical application of the statute of limitations. What's significant about the Whitaker decision is that in many respects it rejects many of the arguments that the plaintiff is making here today, making in the brief. The Court rejected the idea that a court should consider a notice provision with respect to ascertaining the applicable statute of limitations. It specifically rejected a request for a notice provision and based its opinion on these objective facts that are relatively identifiable. And I would add to the Court that that rationale and that philosophy and that ruling is completely consistent with the Supreme Court's pronouncement of Rule 16b in the Reliant Electronic case, where the Supreme Court makes clear that the purpose of 16b, given the fact that it is a strict liability offense, given the fact that there is no room for, there's no need to prove up a scienter, bad motive or anything else, the Court emphasized there in subsequent decisions that the law should be applied with relatively easy administration, so that in this context, in the 16b context, but the Supreme Court in the Ninth Circuit recognized that the law should be applied easily and mechanically. Well, what is your response to the argument that, you know, that's easy to say, but once you file a form with an exemption, that it's really no notice at all? You put on notice to the transaction. Correct. And that is the basis of any lawsuit. Now, that is the triggering event by which a party can bring the lawsuit. The second that notice is filed for the ensuing two years, a party can make a determination as to whether to bring a lawsuit or not. And that certainly was not done here. And since it wasn't done here, it ran afoul of the statute of limitations, and that is an appropriate alternative basis by which to affirm Judge Breyer's ruling. And, Your Honor, with respect to the substantive points reached below, we steadfastly believe that Judge Breyer interpreted the law the appropriate way, interpreted the rule the appropriate way, and came to the appropriate result. And I want to clarify something that may be somewhat confusing from the briefs. In the opening brief, the plaintiff argued that the Court erred below by failing to recognize that 16b3d didn't apply on account of the language in the complaint that the grants were made in advance. In the reply brief, there is a new theory espoused as to why Judge Breyer got it wrong below. And for the first time in this case, in the reply brief, the appellant takes the position that Judge Breyer got it wrong because he failed to appreciate that the compensation committee did not approve the grants in advance of the officer's receipt of the grants. Now, that is a new position. That's a position that staked out only in the reply brief and was not alleged in any of the three complaints  Indeed, Judge Breyer, in issuing the order dismissing the second amended complaint, ruled twofold. In advance of what, he asked rhetorically, because there was no tethering to any identifiable or objective event. But secondarily, Judge Breyer was explicit in ruling that even if you read into the exemption a requirement that the grant must be made in advance of the officer's receipt, even if you read that into the rule, that wasn't alleged in this complaint. It wasn't alleged in any of the three complaints. I guess I have trouble seeing why Judge Breyer was correct in saying that the exemption was part of the plaintiff's affirmative case in light of Ream, which specifically addressed that issue. I know you cite citadel holding, but that doesn't really specifically address that issue and just seems to be listing the elements that the Court is considering and, of course, can't overrule Ream in the first place. Yes, Your Honor. I mean, I think that there are three equally compelling responses to the Court's question. In the first instance, Your Honor, to, again, I think clarify the record. In the brief, the plaintiffs argue that Judge Breyer improperly imposed upon him the burden of disproving the applicability of the exemption. That's not consistent with the record. What the record shows, Your Honor, is in the original complaint, the plaintiff took on the burden of disproving the applicability of the exemption. In the first amended complaint, the plaintiff, again, in a six-page complaint, devoted two pages of it to why the exemption did not apply. I think I can just stop there. Certainly. You know, that's anticipatory pleading, which was obviously a strategic judgment. But even though they did that, are they required to do that? That really kind of begs the question, because even though they put all that in their complaint, if they're not required to plead around a defense, why wouldn't they have pled sufficiently to get to the point so you could have basically a 12 v. 6 or a summary judgment motion? Well, Your Honor, I would say preliminarily, putting aside just for the moment their motivation, the fact that they did it, the fact that they chose to assert affirmatively that defense under the Wright and Miller Treatise that Judge Breyer relied upon and under the Javelin decision and other decisions, it was appropriate for the district court to take their complaint as they drafted it and rule upon it. So there is support for the proposition that if a plaintiff voluntarily assumes a particular burden and asserts a particular defense, an affirmative defense, if the court can divine that the defense invalidates the lawsuit, then it is appropriate for the court to consider that and rule accordingly, which is what happened here. I mean, I understand if the court sees a statute of limitations has run on the face of the complaint, then it's appropriate to dismiss. Our case law makes that clear. But the question of whether they've sufficiently shown the affirmative defense, I didn't see any case that you cited that was analogous to the situation here. Well, Your Honor, I alluded earlier to the motivations of the plaintiffs, and I can't obviously entirely speak to that. I will give you my best estimate as to why it was played in the manner that it was. And I believe it was played in the manner that it was, not out of any sense of charity to the defendants, but rather out of a recognition of what the law is. And I think that if you look at the text of 16b, the text lays out certain things that a plaintiff must show to sustain a 16b violation. One of the last provisions of that statute is that there is an opportunity for exemptions to apply, and unless there is a showing that an exemption doesn't apply, in essence, the liability will attach. The Citadel opinion, I think, is very clear in identifying the elements of a 16b cause of action in the Ninth Circuit. But it can't overrule Ream, right? I beg your pardon? It couldn't overrule Ream. And it doesn't even purport to address that issue. It just lists the factors. And Ream says that the burden is placed on the defendant, the burden of proving every fact essential to invocation of the exemption. So I'm having some trouble understanding how that somehow shifts to the plaintiff simply because they allege certain facts or, you know, I know it was a delicate pleading, and Judge Breyer, of course, appropriately mentioned that, having gone through it three times. But how does it shift to the plaintiff as part of the plaintiff's statement of a claim? Well, I think it does through, first of all, the application of the text of the rule. I believe that the text of the rule imposes upon plaintiffs the obligation to affirmatively disprove the existence of an exemption. How does that square with Ream, which places the burden on the defendant to prove each fact? Well, I would say that the text is really the best source of what the nature of the obligation is. And I believe that Citadel is an accurate depiction of what the particular obligation is with respect to the plaintiff. And I would, you know, I guess respectfully remind the Court that, again, in addition to this discussion as to the elements, there still is, we submit, a legitimate basis to dismiss based upon the voluntary assumption of this particular burden, because the burden was voluntarily assumed here. And in light of the fact that the plaintiff put in play, if you will, the applicability of the burden, I believe that the Court was correct in ruling upon this exemption since it was properly teed up for its consideration and heavily briefed in the court below. Your Honor, I only have 45, 43 seconds. Let me just briefly conclude on the 9b standard. And, you know, I would submit that the Court actually decided this lawsuit based upon an application of 12b-6. It was not ultimately dismissed pursuant to 9b. There's no discussion, per se, in the Second Amended opinion about that particular rule. It is true there was a passing footnote reference to it in the First Opinion, but ultimately the Court concluded that this lawsuit should not go forward, not because of a deficiency in pleading, per se, but rather because the entire legal theory  Thank you, Your Honor. I think, well, we've not got two minutes for him. No, he has an additional part of the appellee's case. Good morning. I'm Tom Christopher with the law firm of Scanton Arms, and I represent the appellee, Mr. Greg Reyes. Mr. Reyes has joined in the arguments that were made by Mr. Potter, but I did, however, want to address the panel separately to point out that with respect to my client, Mr. Reyes, there exists an independent basis in the record to affirm the judgment. And that independent basis arises under SEC Rule 16b-3d-3. And what that rule provides is an exemption from Section 16b, liability, in any case in which the defendant who receives securities from an issuer holds on to those securities for more than six months' time. Wouldn't we, I tried to follow your argument and look through the materials, but isn't this really a factual issue? Is this something that we can put together as a matter of law? I didn't see that in the briefs and the materials. It's our view that everything the Court needs to decide this case in our favor is in the record and properly before the Court. If you look at the SEC filings attached to the complaint, and also the SEC filings of which we asked for judicial notice below, a request that the plaintiffs did not oppose, taken together, they establish beyond any doubt that with respect to every single option that Mr. Reyes received in this case, he held those options for more than six months' time, and in many cases, more than a year's time. As a result, we think that under the plain language of the exemption, 16b-3d-3, he is immune from any liability under Section 16b. And we think all the information the Court needs is properly before the Court. Thank you. Before you, I know you have a lot to address, but I want to ask you about Mr. Reyes' counsel's allegation that everything is there and there's no evidence that he didn't hold them for six months. Well, I can't tell you now that I know one way or the other whether he held them. But he said that he's held them for six months. I have not been able to determine based more personally that that's true or not. I mean, I assume at some point, if we had done this the way I would have preferred, they would have filed an answer, would have asked Mr. Reyes, did you hold the options, and then whatever the ramifications of his answers and his filings would be considered. Anything put in to contest that? We haven't. We don't know anything to contest it. No. The answer is we have not. All right. So there's a question about whether he held them or he didn't hold them. And I don't think it's a seems very unwieldy at this juncture for this Court to try to figure out whether he held them or he didn't hold them. I think in the proper course of time, if the case goes back down, proceeds will have discovery and will find out, and then we'll see where that leads. But the answer to Judge Acuti's question is a typo. A typo. Thank you. But I do want to, I know you're concerned about statute of limitations, and therefore so am I. So I really want to discuss this. I'm going to refer you, the Whitaker case clearly was a case where nothing had been filed. But there have been cases where there's been sort of a partial filing. And I wanted to particularly give you the Second Circuit's site, which we discussed in our brief. And it's called Litzler v. C.C. Investments. And it's 362 F. 3rd 203. And I must tell you, since I argued that appeal, the judges in that case were just as concerned about it as you are. But the conclusion they reached in trying to figure out how to balance the competing interests here was that it's not enough to file something that's misleading or wrong, because it just doesn't get you the purpose of the statute, which is to alert the potential plaintiff what's going on. Was that a 16D case? Yes, it was. And it's, I think the issues are really, I'm going to give you a page site, too. Page 208. But this was, I mean, they're referring to, I mean, it seems to indicate that tolling is limited to failure to file, because it's saying we hold that the incentives of Section 16 are best served if tolling is triggered by noncompliance with the disclosure requirements through failure to file a Form 4. So it does seem to be focusing, I mean, it's ambiguous, but it certainly doesn't clearly support you. And it seems to say through failure to file a Form 4. So it seems like it's reasonably interpreted as just following Whitaker. I'm not debating that point. It was exactly right. That wasn't the word. There wasn't, that was the issue there. But I'm just saying that if you read the section on page 208, the Court explains why it's necessary to have a disclosure that's meaningful and a disclosure that you can use. The suggestion by Mr. Potter, I think, is that somehow they file it and then we have two years to investigate it, or a plaintiff's shareholder's lawyer has two years to investigate it. How would they investigate it? I mean, what are you going to do, go bring a lawsuit without any basis? Well, you're put on notice that there was a, within the six months there was a sale, and to the extent you have knowledge that there's something suspicious, you can investigate it. And I understand that would be the purpose of filing the forms in the first place. Right. But I think that the equitable tolling doctrine, which is a 10b-5 concept, imported to Section 60B might solve the question so that we don't have what's obviously concerning you, which is what apparently is an open-ended section on limitations. But what do you do when Litzler also had that footnote from Judge Jacobs who had had previous cases in this area, and he basically says, you know, it's either intentional or unreasonable, and it's a real failure to file it. And it sort of underscores that we're talking about failing to file. He was, I have the footnote right in front of me. He, you can tell me, but I read it. He seems to think that you should imply the same kind of an equitable tolling standard, so that if for some reason or another, because in this case, the argument was that the plaintiff should have known and been able to piece together from other sources the fact that these transactions occurred. And therefore, the defendants argued that you are stopped from bringing them because even though we didn't file the form first, you could have figured it out. That was the essence of the defendant's claim. You could have read it. I don't remember exactly what they said we could have done. And the essence of the panel's decision was, uh-uh, you have to have everything in your one spot, and you can find it, and then you know whether there's a claim or this claims. Otherwise, it won't work. Ginsburg. All right. Thank you. Roberts. Thank you, Judge. Ginsburg. The case just argued, Roth v. Rays, is submitted. I want to thank all counsel for your argument and your briefing in this case. It's been excellent. Thank you. All rise. Court is adjourned.
judges: McKeown, Ikuta, Walter